### FIRST FEDERAL BANK, FSB *v.* WHITNEY DEVELOPMENT CORPORATION ET AL.
### (15377)

Peters, C. J., and Callahan, Berdon, Katz and Dupont, Js.

Argued May 1—officially released July 9, 1996

*Dean W. Baker,* with whom was *William Craig,* for the appellant (defendant Carmel Sullivan).

*Richard B. Cramer,* for the appellee (substitute plaintiff Berkeley Federal Bank and Trust, FSB).

*Lawrence W. Berliner* filed a brief for the Office of Protection and Advocacy for Persons with Disabilities as amicus curiae.

PETERS, C. J. This appeal requires us to decide whether General Statutes § 47a-23c,[1] which protects

---

[1] General Statutes § 47a-23c provides in relevant part: "Prohibition on eviction of certain tenants except for good cause. (a) (1) Except as provided in subdivision (2) of this subsection, this section applies to any tenant who resides in a building or complex consisting of five or more separate dwelling units or who resides in a mobile manufactured home park and who is either: (A) Sixty-two years of age or older, or whose spouse, sibling, parent or grandparent is sixty-two years of age or older and permanently resides with that tenant; (B) blind, as defined in section 1-1f; or (C) physically disabled, as defined in section 1-1f, but only if such disability can be expected to result in death or to last for a continuous period of at least twelve months.

"(2) With respect to tenants in common interest communities, this section applies only to (A) a conversion tenant, as defined in subsection (3) of section 47-283, who (i) is described in subdivision (1) of this subsection, or (ii) is not described in subdivision (1) of this subsection but, during a transition period, as defined in subsection (4) of section 47-283, is residing in a conversion condominium created after May 6, 1980, or in any other conversion common interest community created after December 31, 1982, or (iii) is not described in subdivision (1) of this subsection but is otherwise protected as a conversion tenant by public act 80-370, and (B) a tenant who is not a conversion tenant but who is described in subdivision (1) of this subsection if his landlord owns five or more dwelling units in the common interest community in which the dwelling unit is located.

"(3) As used in this section, 'tenant' includes each resident of a mobile manufactured home park, as defined in section 21-64, including a resident

certain classes of tenants from dispossession, limits the right of a mortgagee after foreclosure to obtain, pursuant to General Statutes § 49-22,[2] an execution of a judgment of ejectment against a protected tenant. The trial court rendered a judgment of strict foreclosure

who owns his own home, 'landlord' includes a 'licensee' and an 'owner' of a mobile manufactured home park, as defined in section 21-64, 'complex' means two or more buildings on the same or contiguous parcels of real property under the same ownership, and 'mobile manufactured home park' means a parcel of real property, or contiguous parcels of real property under the same ownership, upon which five or more mobile manufactured homes occupied for residential purposes are located.

"(b) (1) No landlord may bring an action of summary process or other action to dispossess a tenant described in subsection (a) of this section except for one or more of the following reasons: (A) Nonpayment of rent; (B) refusal to agree to a fair and equitable rent increase, as defined in subsection (c) of this section; (C) material noncompliance with section 47a-11 or subsection (b) of section 21-82, which materially affects the health and safety of the other tenants or which materially affects the physical condition of the premises; (D) voiding of the rental agreement pursuant to section 47a-31, or material noncompliance with the rental agreement; (E) material noncompliance with the rules and regulations of the landlord adopted in accordance with section 47a-9 or 21-70; (F) permanent removal by the landlord of the dwelling unit of such tenant from the housing market; or (G) bona fide intention by the landlord to use such dwelling unit as his principal residence.

"(2) The ground stated in subparagraph (G) of subdivision (1) of this subsection is not available to the owner of a dwelling unit in a common interest community occupied by a conversion tenant.

"(3) A tenant may not be dispossessed for a reason described in subparagraph (B), (F) or (G) of subdivision (1) of this subsection during the term of any existing rental agreement.

"(c) (1) The rent of a tenant protected by this section may be increased only to the extent that such increase is fair and equitable, based on the criteria set forth in section 7-148c. . . .

"(d) A landlord, to determine whether a tenant is a protected tenant, may request proof of such protected status. On such request, any tenant claiming protection shall provide proof of the protected status within thirty days. The proof shall include a statement of a physician in the case of alleged blindness or other physical disability."

[2] General Statutes § 49-22 provides in relevant part: "Execution of ejectment on foreclosure judgment. Disposition of property. (a) In any action brought for the foreclosure of a mortgage or lien upon land, or for any equitable relief in relation to land, the plaintiff may, in his complaint, demand possession of the land, and the court may, if it renders judgment in his favor and finds that he is entitled to the possession of the land, issue execution of ejectment, commanding the officer to eject the person or persons in

against the defendants,[3] including the tenant in possession of the mortgaged property, Carmel Sullivan, and in favor of the substitute plaintiff, Berkeley Federal Bank and Trust, FSB (Berkeley).[4] Subsequently, the trial court issued an execution of a judgment of ejectment against Sullivan, but stayed execution of the judgment pending appeal. Sullivan appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

For the purposes of this appeal, the relevant facts are undisputed. Because Sullivan is over sixty-two years of age and has certain physical disabilities, she meets the requirements of a protected tenant of a condominium unit under § 47a-23c (a) (1) (A) and (B). She has paid and continues to pay fair rent in the amount of $600 each month. Berkeley does not have good cause to evict Sullivan under § 47a-23c (b) (1).

The plaintiff mortgagee filed a complaint against Sullivan, and others, seeking strict foreclosure and other relief.[5] After the trial court, Hon. Anthony V. DeMayo,

---

possession of the land and to put in possession thereof the plaintiff or the party to the foreclosure entitled to the possession by the provisions of the decree of said court, provided no execution shall issue against any person in possession who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens. The officer shall eject the person or persons in possession and may remove such person's possessions and personal effects and set them out on the adjacent sidewalk, street or highway. . . ."

[3] The defendants in this action were Benjamin S. Morris and Whitney Development Corporation, who had executed the mortgage note, and Whitney Walk Condominium Association, Inc., Betsey Henley-Cohn, and Carmel Sullivan.

[4] Berkeley was substituted as the plaintiff after the original plaintiff, First Federal Bank, FSB, had transferred to it the mortgage and note in issue.

[5] The complaint alleged that the defendants Benjamin S. Morris and Whitney Development Corporation had executed a note for $56,200, secured by a mortgage on unit C-3 of building number two, parking space number twenty-nine and storage bin number one, of Whitney Walk Condominium

state trial referee, rendered a judgment of strict foreclosure against the defendants,[6] Sullivan moved to open the judgment. The trial court, *Hon. Donald W. Celotto*, state trial referee, granted the motion in order to allow Sullivan to preserve a defense of protection from dispossession pursuant to § 47a-23c in the event that Berkeley sought an execution of the judgment of ejectment, and later reentered the judgment nunc pro tunc.

After none of the defendants, including Sullivan, redeemed on the assigned law days, Berkeley moved for possession and an execution of the judgment of ejectment against Sullivan. The trial court, *Hon. Donald W. Celotto*, state trial referee, granted the motion, concluding that § 47a-23c does not protect a tenant in possession from ejectment pursuant to § 49-22. The trial court stayed its judgment pending appeal.

On appeal to this court, Sullivan claims that § 47a-23c applies to any proceeding to dispossess a protected

in New Haven. These defendants ceased payments on February 1, 1993, and the entire sum became due.

In addition, the complaint alleged that the remaining defendants, Whitney Walk Condominium Association, Inc., Henley-Cohn, and Sullivan, each had a potential interest in the mortgaged property. Whitney Walk Condominium Association, Inc., could claim an interest by virtue of liens for common charges, an attachment and a subsequent judgment lien. Henley-Cohn was the owner of record of the mortgaged property. Sullivan was the tenant in possession of the mortgaged property.

The trial court, *Hon. Donald W. Celotto*, state trial referee, granted the plaintiff's motion to cite in Sullivan, who had not been named as a defendant in the original complaint.

[6] The trial court rendered a default judgment against Whitney Development Corporation for failure to appear. The trial court rendered judgment against Whitney Walk Condominium Association, Inc., after it disclosed that it had no defense. The trial court rendered a default judgment against Benjamin S. Morris for failure to plead. The trial court, *Hon. Donald W. Celotto*, state trial referee, rendered summary judgment against Henley-Cohn.

On October 13, 1994, the trial court rendered a default judgment against Sullivan for failure to appear, and, after she had filed an appearance on October 19, 1994, the trial court, *Hon. Anthony V. DeMayo*, state trial referee,

tenant, including a proceeding for an execution of a judgment of ejectment after a judgment of strict foreclosure has been rendered. Berkeley claims, to the contrary, that the applicable statute is § 49-22, which authorizes an execution of a judgment of ejectment without regard to § 47a-23c, which, according to Berkeley, relates solely to summary process proceedings. We agree with Sullivan.

Resolution of the issue presented by this appeal requires a reconciliation of two statutes that lie at the conjunction of mortgage law and landlord tenant law. One statute confers rights upon a mortgagee and the other confers rights upon the mortgagor's tenants. In undertaking our analysis of the proper realm of each statute, we are "guided by well established principles of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the [statutes themselves], to the legislative history and circumstances surrounding [their] enactment, to the legislative policy [they were] designed to implement, and to [their] relationship to existing legislation and common law principles governing the same general subject matter[s]. . . . *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996); *HUD/Barbour-Waverly* v. *Wilson*, 235 Conn. 650, 656, 668 A.2d 1309 (1995)." (Internal quotation marks omitted.) *Herbert S. Newman & Partners* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 755–56, 674 A.2d 1313 (1996).

Our task of statutory construction is guided further by the fact that "§ 47a-23c is a remedial statute intended to benefit elderly, blind and physically disabled ten-

on April 27, 1995, rendered a default judgment against her for failure to plead .

ants." *O'Brien Properties, Inc.* v. *Rodriguez*, 215 Conn. 367, 373, 576 A.2d 469 (1990); see 23 H.R. Proc., Pt. 18, 1980 Sess., p. 5327, remarks of Representative Richard D. Tulisano; 23 S. Proc., Pt. 5, 1980 Sess., pp. 1393–94, remarks of Senator Clifton A. Leonhardt. As such, the statute must be "construed liberally in favor of those whom the legislature intended to benefit" in order to effect the legislative intent. *O'Brien Properties, Inc.* v. *Rodriguez*, supra, 373; see *Herbert S. Newman & Partners* v. *CFC Construction Ltd. Partnership*, supra, 236 Conn. 757; *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 140, 653 A.2d 798 (1995).

Under the circumstances of this case, we must answer two questions. First, does the protection afforded to tenants by § 47a-23c have any applicability in the context of an action by a mortgagee under § 49-22 to obtain possession of the mortgaged premises after foreclosure? Second, if § 47a-23c is applicable, how are the terms of the two statutes to be reconciled? We conclude that both questions should be answered to afford Sullivan the rights conferred upon her by § 47a-23c.

I

We must first determine whether the circumstances of this case implicate § 47a-23c as well as § 49-22. The parties agree that, as a general matter, § 49-22 authorizes a mortgagee to obtain possession of foreclosed property from a mortgagor's tenant in possession. Berkeley disagrees, however, with Sullivan's contention that § 47a-23c affords the right to prevent ejectment to a mortgagor's tenant after foreclosure. We conclude that the fact of a foreclosure, under the circumstances of this case, does not preclude a tenant from invoking the rights conferred by § 47a-23c.

The crucial question is the scope of § 47a-23c. That statute provides in relevant part that "[n]o *landlord*

may bring an *action* of summary process *or other action* to dispossess a [protected] *tenant* . . . except" for good cause. (Emphasis added.) Berkeley argues that it is not a "landlord," that its motion for an execution on its judgment of ejectment after foreclosure is not an "action" and that, after foreclosure, Sullivan is no longer a "tenant." We disagree. The terms "landlord," "action" and "tenant" are each defined by statute in a manner that brings this case within § 47a-23c.

Berkeley fits the definition of "landlord" because it holds absolute title to the condominium unit. A "landlord" is defined as "the owner . . . of the dwelling unit . . . ."[7] General Statutes § 47a-1 (d). "Owner" is defined as "one or more persons, jointly or severally, in whom is vested . . . all or part of the legal title to property . . . ." General Statutes § 47a-1 (e). Berkeley became the owner, and thus the landlord, when the entire legal title to the condominium unit became vested in it as a result of the foreclosure judgment and the passing of the law days.[8] See *Barbara Weisman, Trustee* v.

[7] It is undisputed that the condominium unit at issue is a dwelling unit. " 'Dwelling unit' means any house or building, or portion thereof, which is occupied, is designed to be occupied, or is rented, leased or hired out to be occupied, as a home or residence of one or more persons." General Statutes § 47a-1 (c).

[8] Under our common law, a mortgagee holds legal title to the mortgaged property upon execution of the mortgage, subject to defeasance upon redemption by the mortgagor. See *Conference Center Ltd.* v. *TRC*, 189 Conn. 212, 218, 455 A.2d 857 (1983); *State* v. *Stonybrook, Inc.*, 149 Conn. 492, 496, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962); *City Lumber Co. of Bridgeport, Inc.* v. *Murphy*, 120 Conn. 16, 19, 179 A. 339 (1935). The decree of foreclosure and the passing of the law days confirms absolute title in the mortgagee and cuts off the mortgagor's right to redeem. See *City Lumber Co. of Bridgeport, Inc.* v. *Murphy*, supra, 25. Because it is unnecessary for us to do so, we do not determine, in this case, whether a mortgagee is an "owner" pursuant to § 47a-23c prior to the confirmation of title after foreclosure. Cf. *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 568–74, 620 A.2d 118 (1993) (mortgagee is not owner for purpose of statute relating to notice of filing of mechanic's lien); *State* v. *Stonybrook, Inc.*, supra, 496 (mortgagee holds technical legal title only for purpose of enforcing payment of debt); *Desiderio* v. *Iadonisi*,

*Kaspar*, 233 Conn. 531, 551, 661 A.2d 530 (1995) ("judgment of strict foreclosure in favor of senior mortgagee vests absolute title in the foreclosing plaintiff, upon the failure of the junior mortgagees who are parties defendant to redeem the property"); *Crane* v. *Loomis*, 128 Conn. 697, 700, 25 A.2d 650 (1942) (upon failure to redeem, title becomes absolute in mortgagee); *City Lumber Co. of Bridgeport, Inc.* v. *Murphy*, 120 Conn. 16, 25, 179 A. 339 (1935) ("[w]here a foreclosure decree has become absolute by the passing of the law days, the outstanding rights of redemption have been cut off and the title has become unconditional in the [mortgagee]"); *Nourse* v. *Lycett*, 114 Conn. 432, 437, 159 A. 277 (1932) (judgment of foreclosure determines "debt and the absolute title of the mortgagee after the law day").

Berkeley next claims that a motion for an execution of the judgment of ejectment, pursuant to an action for foreclosure, is not an "action," as that term is used in § 47a-23c and defined in General Statutes § 47a-1 (a).[9] Specifically, Berkeley contends that the codification of § 47a-23c in the summary process chapter of the landlord and tenant title implies a corresponding limitation in the scope of the phrases "other action to dispossess a tenant" in § 47a-23c (b) (1) and "any other proceeding in which rights are determined" in the definition of "action." See General Statutes § 47a-1 (a), footnote 9. Despite this broad statutory language, Berkeley argues that § 47a-23c applies only to actions brought pursuant to statutes contained in title 47a, denominated Landlord and Tenant. We are not persuaded.

Section 47a-23c (b) (1) protects certain classes of tenants from eviction through "an action of summary

115 Conn. 652, 654, 163 A. 254 (1932) (same); *Savage* v. *Dooley*, 28 Conn. 411, 413 (1859) (same).

[9] General Statutes § 47a-1 (a) provides: " 'Action' includes recoupment, counterclaim, set-off, cause of action and any other proceeding in which rights are determined, including an action for possession."

process or *other action to dispossess a tenant . . . .*"
(Emphasis added.) "Action" is expansively defined in
part as "any other proceeding in which rights are deter-
mined, including an action for possession." General
Statutes § 47a-1 (a). Although § 47a-23c does not explic-
itly state that it applies to a motion for ejectment after
foreclosure, we conclude that such a motion is an
"action to dispossess a tenant," and thus, is an "action"
to which the statute applies. Cf. *Southington* v. *Francis*,
159 Conn. 64, 69, 69 n.2, 266 A.2d 387 (1970) (applying
summary process statute, General Statutes § 47a-42, to
action to eject tenant brought in eminent domain pro-
ceeding). This conclusion follows from the language of
the statute and is reinforced by the broad remedial
purpose of the statute. *O'Brien Properties, Inc.* v.
*Rodriguez,* supra, 215 Conn. 373. Because the method
by which the landlord acquired title is wholly irrelevant
to the statute's remedial purpose, namely, the protec-
tion of certain classes of tenants, it would be inconsis-
tent with that remedial purpose to construe the statute
to exclude protection for tenants whose landlords
acquire title by foreclosure and seek possession through
an execution.

Finally, we consider Berkeley's claim that Sullivan
does not fit within the definition of "tenant" under § 47a-
23c. We conclude that Sullivan is a "tenant" because
she is a former tenant who became a tenant at suffer-
ance. See *O'Brien Properties, Inc.* v. *Rodriguez,* supra,
215 Conn. 373 (holding that § 47a-23c protects former
tenant within protected class who has become tenant
at sufferance). The lease of a mortgagor's tenant, if the
lease was subsequent to the mortgage, is extinguished
upon foreclosure by the mortgagee and the passing of
the law days without a redemption. See *Small Business
Investment Co.* v. *Cavallo,* 188 Conn. 286, 288–89, 449
A.2d 988 (1982) (mortgagor); *Beach* v. *Beach Hotel
Corp.,* 113 Conn. 716, 720, 156 A. 865 (1931) (tenant);

R. Kratovil & R. Werner, Modern Mortgage Law and Practice (2d Ed. 1981) § 20.05; see also *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* supra, 120 Conn. 25 (Upon foreclosure, "[a]ll right and interest of subsequent incumbrancers [are] extinguished. The [mortgagee is] vested with absolute title in and dominion over the property.").[10] Extinction of the lease does not, however, make the tenant a trespasser. The tenant becomes a tenant at sufferance at the moment his or her rightful possession terminates. "A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his [or her] right thereto has terminated. *Welk* v. *Bidwell,* 136 Conn. 603, 608–609, 73 A.2d 295 (1950)." (Internal quotation marks omitted.) *O'Brien Properties, Inc.* v. *Rodriguez,* supra, 372; see *Small Business Investment Co.* v. *Cavallo,* supra, 288–89. Because Sullivan continued in possession after her rightful possession had ceased, she became a tenant at sufferance. As a tenant at sufferance, she is a "tenant" as that term is used in § 47a-23c.

For these reasons, we reject Berkeley's argument that § 47a-23c, by its own terms, has no applicability in the case of a motion for ejectment. Construed in light of its remedial purposes, the statute has applicability to Sullivan's rights under the circumstances of this case.

II

Having concluded that §§ 49-22 and 47a-23c both pertain to Berkeley's attempt to obtain possession of the foreclosed property occupied by Sullivan, we must next determine how these statutory provisions interact in the

---

[10] A tenant's right to possession may terminate prior to the judgment of foreclosure and the passing of the law days if the mortgagee, after the mortgagor's default, exercises its right to possession by an actual entry upon the mortgaged premises and evicts the tenant. See *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 218–19, 455 A.2d 857 (1983); *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218, 224, 228, 167 A. 728 (1933).

particular factual circumstances of this case. Bearing in mind the remedial purpose of § 47a-23c, we conclude that its operative provisions prohibit the eviction of Sullivan by Berkeley in the absence of good cause.

As did the common law,[11] § 49-22 permits a court, in its discretion and *if the mortgagee is so entitled,* to issue an execution of a judgment of ejectment in favor of the mortgagee after a successful action to foreclose the mortgage, as long as the person in possession is a party to the mortgage action. Section 49-22 (a) provides, in relevant part, that "[i]n any action brought for the foreclosure of a mortgage . . . the [mortgagee] may, in his complaint, demand possession of the land, and the court *may,* if it renders judgment in his favor and *finds that he is entitled to the possession of the land,* issue execution of ejectment . . . provided no execution shall issue against any person in possession who is not a party to the action . . . ." (Emphasis added.)

Because § 49-22 requires the trial court to determine whether the mortgagee is entitled both to foreclosure[12] and to possession before issuing an execution of a judgment of ejectment, it expressly contemplates that there may exist circumstances in which a mortgagee is entitled to foreclosure, but is not entitled to possession. Indeed, courts have recognized that, "in equity, title and possession of premises may not automatically be

---

[11] Under the common law, "[t]he decree [of foreclosure] obtained by the [mortgagee] gave him a right of entry . . . ." (Internal quotation marks omitted.) *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* supra, 120 Conn. 22. Actual possession could be secured by an execution of ejectment, by summary process; see id.; *Nourse* v. *Lycett,* supra, 114 Conn. 437; D. Caron, Connecticut Foreclosures: An Attorney's Manual of Practice and Procedure (2d Ed. 1989) § 9.04, p. 153; or by peaceably entering upon the property without violating any provision of the law. See *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218, 224–25, 167 A. 728 (1933).

[12] The parties do not dispute that Berkeley was entitled to foreclosure and that Sullivan's rights, unless she is protected by § 47a-23c, were extinguished by the foreclosure action.

linked." *EMC Mortgage Corp.* v. *Rossi*, 43 Conn. Sup. 467, 469, 659 A.2d 212 (1995); see *Hite* v. *Field*, 38 Conn. Sup. 70, 79, 462 A.2d 393 (1982) (permanently enjoining execution of judgment of ejectment because tenants in possession were not given notice of action in violation of right to due process).

Although § 49-22 fails to specify the circumstances under which a mortgagee would not be entitled to possession, we are persuaded that § 47a-23c identifies one such situation. Section 47a-23c evinces the legislative intent to protect certain classes of tenants from removal from their rental units, regardless of the identity of the landlord or the method by which the landlord acquired title. The legislature provided this protection for elderly tenants because "it [would be] unfair, at that stage in people's [lives], once they are sixty-two, when they are often living on fixed incomes to tell them they have to leave their home[s]. The trauma that is involved, the loss of friends, the loss of a sense of community, the displacement from [perhaps] long established homes, the displacement from places of worship, from medical services. All these things create a very negative impact on elderly persons . . . . We are focusing on the people who do need the protection." 23 S. Proc., Pt. 5, 1980 Sess., pp. 1393–94, remarks of Senator Clifton A. Leonhardt; see 23 H.R. Proc., Pt. 18, 1980 Sess., p. 5327, remarks of Representative Richard D. Tulisano.

Not only must we construe § 47a-23c broadly in light of its remedial purpose; *O'Brien Properties, Inc.* v. *Rodriguez*, supra, 215 Conn. 373; we must also assume that the legislature "acted with knowledge of existing statutes[13] and with an intent to create one consistent body of laws." *Zachs* v. *Groppo*, 207 Conn. 683, 696,

---

[13] Section 47a-23c was enacted after § 49-22. Section 47a-23c was first enacted in 1980. See Public Acts 1980, No. 80-370, § 1. Section 49-22 was first enacted in 1875. See Public Acts 1875, c. 54.

542 A.2d 1145 (1988). The legislature, therefore, was aware when it enacted § 47a-23c that foreclosing mortgagees could pursue the ejectment of tenants in possession through § 49-22. It strikes us as highly unlikely that the legislature intended to exclude from the protective shield created by § 47a-23c those tenants whose landlords acquire ownership interests as foreclosing mortgagees.[14] We conclude, therefore, that § 47a-23c shields tenants who qualify for its protections from executions of judgments of ejectment pursuant to § 49-22.

Berkeley argues, however, that when the legislature revised § 49-22 in 1984, extension of the protections afforded by § 47a-23c to a tenant of a defaulting mortgagor was a possibility that the legislature explicitly considered and rejected. We disagree. In 1984, the law revision commission proposed four alternate amendments to § 49-22 to the judiciary committee. These proposals were intended to strengthen the due process rights of a mortgagor's tenant upon foreclosure in response to a Superior Court decision; *Hite* v. *Field*, supra, 38 Conn. Sup. 79; declaring the existing provision unconstitutional. See Law Revision Commission, Ninth Annual Report of the Connecticut Law Revision Commission to the General Assembly (1983) pp. H-2 to H-28. The fourth alternate proposal suggested that the legislature amend § 49-22 to require that all actions to dispossess a mortgagor's tenant be brought under the summary process statutes in order to ensure the vindi-

---

[14] If, despite the broad statutory language and expansive remedial purpose of § 47a-23c, the legislature had intended to exclude mortgagees from its provisions, it would have explicitly done so. Section 47a-23c (b) (1) lists several situations in which a landlord may successfully dispossess a protected tenant, such as if the tenant has failed to pay rent or the landlord desires to remove the rental unit from the housing market permanently. "[W]here express exceptions are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute." (Internal quotation marks omitted.) *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 476, 673 A.2d 484 (1996).

cation of the tenant's due process rights. Id., pp. H-9 to H-11, and H-26 to H-28. The judiciary committee, however, did not refer this proposal to the General Assembly. See 27 H.R. Proc., Pt. 9, 1984 Sess., p. 3131, remarks of Representative Martin M. Looney (describing bill). Nothing in the proceedings before the General Assembly indicates that it expressly considered this option; see *Institute of Living* v. *Hartford*, 133 Conn. 258, 264–66, 50 A.2d 822 (1946) (unclear extent to which committee report before General Assembly influenced legislative committee or legislators); and we will not speculate about whether it considered the option sub silentio. Cf. *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission*, 219 Conn. 685, 695 n.10, 595 A.2d 313 (1991) ("we generally restrict our review of a statute's legislative history to the discussions conducted on the floor of the House of Representatives or of the Senate" unless circumstances indicate committee hearing testimony would be especially illuminating); *Connecticut Rural Roads Improvement Assn.* v. *Hurley*, 124 Conn. 20, 26, 197 A. 90 (1938) (reviewing report of commission that had proposed bill that was ultimately passed because bill was "pro tanto response to recommendations of the commission"). We are persuaded that the events to which Berkeley refers to support its construction of § 49-22 do not inform the issue on this appeal.

Our review of the remedial provisions of § 47a-23c persuades us that the trial court improperly concluded that § 47a-23c does not protect a tenant from an execution of a judgment of ejectment pursuant to § 49-22. Under the circumstances of this case, in which there is no showing of probable cause to terminate Sullivan's tenancy, we hold that Berkeley may not eject Sullivan.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.